The Hon. S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. MORRIS,<br><br>Defendant. | NO. MJ24-619<br><br>COMPLAINT FOR VIOLATIONS OF<br>21 U.S.C. §§ 841(a)(1) and (b)(1)(B) |

BEFORE The Honorable United States Magistrate Judge S. Kate Vaughan, United States Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

**(Possession with Intent to Distribute Fentanyl)**

On or about October 4, 2023, in Whatcom County, within the Western District of Washington, **THOMAS J. MORRIS** did knowingly and intentionally possess, with the intent to distribute, a controlled substance, N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

COMPLAINT - 1
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that the offense involved 40 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

And the complainant states that this Complaint is based on the following information:

I, Kenneth Richardson, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the DEA, currently assigned to the Bellingham Resident Office in Bellingham, Washington. I have been employed as a DEA Special Agent since 2009 and am assigned to investigate drug trafficking organizations operating in the Western District of Washington.

2. My duties and experience as a Special Agent include the enforcement of federal criminal statutes, including statutes related to drug offenses, firearm offenses, money-laundering offenses, and other criminal offenses. As a Special Agent of the DEA, I am authorized by law to conduct investigations, execute search warrants, and make arrests for federal felony offenses.

3. I have completed the DEA Basic Agent Training program at the DEA Academy in Quantico, Virginia. I have participated in numerous narcotics investigations at both the local and federal level, and I have participated in the execution of local and federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state-controlled substance laws, including the

COMPLAINT - 2
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trafficking and distribution of cocaine, methamphetamine, heroin, fentanyl, marijuana, and other dangerous drugs.

4.  I have interviewed numerous drug dealers, drug users, and knowledgeable confidential sources about the lifestyles, appearances, and habits of drug dealers and users. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect, conceal, and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, telephonic and computer applications, coded communications, slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations. I have observed and have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking. I have also examined documentation of various methods by which cocaine, methamphetamine, heroin, fentanyl, marijuana, and other illicit drugs are smuggled, transported, and distributed. I have participated in numerous hours of surveillance of narcotics traffickers. During surveillance, I have personally observed narcotics transactions, counter surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings. Acting in an undercover capacity, I have acquired dangerous drugs from drug traffickers and learned about methods in thwarting law enforcement officers while trafficking drugs. I have participated in numerous investigations involving the interception of wire and electronic communications. I have been involved with the review and decoding of veiled intercepted conversations between narcotics traffickers that were subsequently substantiated. Throughout my career in law enforcement, I have received training from, worked with, spoken with, and gleaned

COMPLAINT - 3
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

knowledge from several experienced federal, state, local, and international narcotics officers concerning the use of cell phones and mobile applications by drug traffickers to facilitate drug trafficking.

5. I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, I have had the opportunity to monitor, listen to, and review transcripts and line sheets documenting the content of intercepted conversations involving the trafficking of cocaine, methamphetamine, fentanyl, heroin, and other narcotics, by persons who used some form of code to attempt to thwart law enforcement detection. I have also spoken with and/or interviewed drug dealers or confidential sources (informants) who were experienced in speaking in coded conversation. I have also participated in investigations into drug dealers who engage in the promotion of prostitution, including interviews and reviewing social media and electronic communication search warrant returns. From these experiences, and also from discussions with other experienced agents, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers and those promoting prostitution in the course of their criminal activities, including their use of firearms to protect their related activities and of cellular telephones and other electronic means to facilitate communications while avoiding law enforcement scrutiny.

6. The facts set forth in this Affidavit are based on my own personal observations, knowledge, training, and experience; information obtained from other agents and witnesses; review of documents and records related to this investigation; and communications with others who have personal knowledge of the events and circumstances described herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant, and therefore does not set forth all of my knowledge about this matter.

//

COMPLAINT - 4
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# I. SUMMARY OF PROBABLE CAUSE

## Overview

7. The United States, including the DEA, the Bureau of Indian Affairs (BIA), and the FBI, is conducting a criminal investigation of a regional DTO that is supplied primarily by out-of-state sources regarding possible violations of the Target Offenses. Investigators are referring to this regional DTO, to include its out-of-state suppliers, as "Jackson DTO" and have identified Marquis Jackson and Markell Jackson as prominent members of the DTO.

8. FBI's investigation into the Jackson DTO began in early 2022 and identified that the Jackson DTO is affiliated with a local street gang known as "44 Holly," which is a subset of the Crips gang. Concurrently, DEA agents learned that in September 2023, several vulnerable persons had recently died from fentanyl overdoses and suspected that Markell Jackson, a member of the Jackson DTO, supplied fentanyl to Lummi Tribal Members during this time period. Federal, State, and Tribal agencies collaborated and uncovered a network of drug trafficking across multiple states.

## October 4, 2023, Seizure of Fentanyl from THOMAS J. MORRIS

9. On October 4, 2023, officers of the Lummi Tribal Police Department (LPD) stopped a silver Jeep SUV without a rear license plate. As officers approached the vehicle, they observed the driver as Thomas MORRIS, who they believed was unlicensed at the time. A short time later, Washington Department of Licensing returned that MORRIS' driver's license was listed as "Revoked 1st Degree" with a restriction status for "Ignition Interlock Device[1]" required.

10. Officers deployed a K-9 around the vehicle which alerted to the presence of a controlled substance. As a result of the positive K-9 alert, Lummi PD conducted a search

---

[1] An Ignition Interlock Device (IID) is a device that requires a driver to provide a breath sample before a car's engine with start. If alcohol is detected, the car will not start.

COMPLAINT - 5
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of the vehicle. Officers recovered approximately 500 blue pills (weighing approximately 55.6 gross grams), which they suspected were fentanyl pills. The Bureau of Indian Affairs (BIA) responded to the scene to assist LPD.

11. Officers provided MORRIS with his *Miranda* warnings and MORRIS agreed to an interview. During the interview with MORRIS, MORRIS informed officers that he had several more "boats[2]" of fentanyl pills in his residence and retrieved an audio speaker box from the residence and transferred the box to officer. Agents retrieved approximately 3,000 fentanyl pills from the box.

12. Officers and MORRIS drove to LPD and to continue the interview. MORRIS stated that his source of supply for both fentanyl pills and cocaine went by the moniker "Chapo." MORRIS described "Chapo" as a "little black dude, about 20 years old." MORRIS also informed officers that "Chapo's" number was (425) 953-9277. MORRIS stated that he intended to pick up nine zips ("Zip" is a slang word for an ounce of drugs such as cocaine, methamphetamine, and/or fentanyl powder. During this particular interaction, MORRIS was talking about ounces of cocaine) that evening. MORRIS stated that "Chapo" drives a white car but could not specify the make and model. MORRIS met with "Chapo" once every 10 days to two weeks. MORRIS stated that he would purchase about five boats (fentanyl pills) at a time from "Chapo." Each boat of fentanyl pills is 1,000 pills. Therefore MORRIS indicated that he purchased 5,000 fentanyl pills from "Chapo" at a time. Agents were already familiar with "Chapo" and the description provided by MORRIS matched that of Markell Jackson.

13. Based on my training and experience, and from past discussions with drug traffickers, drug users, family members of drug users, and detectives and agents who are also experienced in investigating drug trafficking, I know that a dosage unit from a fentanyl

---

[2] Based on my training and experience, and prior investigations I am familiarity with the term "boat" which is used by drug users and dealers to refer to a quantity of 1,000 fentanyl pills.

COMPLAINT - 6
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pill may be one-fourth or even one-tenth of a single pill. In my training and experience 3,500 fentanyl pills represents distribution quantities of fentanyl.

In total, MORRIS possessed approximately 390 grams (gross weight) of suspected fentanyl pills. The pills were submitted for lab testing. Results are pending.

## CONCLUSION

14. Based on the above facts, I respectfully submit that there is probable cause to believe that THOMAS MORRIS did knowingly and intentionally possess with intent to distribute a controlled substance, N-phenyl-N-[ 1-( 2-phenylethyl )-4-piperidinyl ] propanamide (fentanyl), in violation of Title 21, United States Code, Section 841(a)(1).

_____
Kenneth Richardson
Special Agent
Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to before me by telephone, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 30th day September, 2024.

_____
S. KATE VAUGHAN
UNITED STATES MAGISTRATE JUDGE

COMPLAINT - 7
United States v. Thomas J. Morris

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970